**John C. KELLER, Appellant (Plaintiff below),**

v.

**Harlan B. ANDERSON et al., Appellees (Defendants below).**

**No. 4573.**

Supreme Court of Wyoming.

Oct. 12, 1976.

Rehearing Denied Nov. 19, 1976.

Charles F. Hawkins, of Marks, Hawkins, Jacobs & Ladd, Barry F. McCarthy, San Jose, Cal., and Vincent J. Horn, Jr., Casper, for appellant.

Frank D. Neville, of Wehrli & Williams, Casper, for appellee Krause.

Michael J. Sullivan, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellee Cole.

William S. Bon, Casper, for appellee Corbett.

J. E. Vlastos, of Cardine, Vlastos & Reeves, Casper, for appellees Carnahan and Anderson.

R. R. Bostwick, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellee Memorial Hospital of Natrona County.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

On June 7, 1974, John C. Keller, plaintiff below and appellant here, filed a complaint pro se, which charged, upon the public records of the District Court in and for Natrona County, Wyoming, the appellees-defendants with negligence in medical care and treatment of injuries received by Keller in an automobile accident on July 16, 1972.

Not until January 27, 1975, were summonses caused to be issued, whereupon they were returned and filed on January 29, 1975, showing service to have been made on the defendants on the previous day. Upon each summons the following appeared:

"John C. Keller
_____
Attorney for Plaintiff
c/o MARKS, HAWKINS & JACOBS
_____
Address
101 Park Center Plaza, Suite 1301
San Jose, CA 95113"

We observe that, while it does not appear on its face that the law firm of Marks, Hawkins & Jacobs prepared the complaint, it was done in a remarkably artful way for a layman and, in point of fact, it developed in argument before this court that Mr. Hawkins' firm probably did prepare the complaint, although the attorneys of that firm did not lend their name to it and caused it to appear as though it was drafted and filed by plaintiff Keller. When the complaint was filed, none of the above named firm members were authorized to practice law in Wyoming and there was then no Wyoming counsel shown as attorney of record.[1] The complaint and summonses were not drafted and executed in compliance with the Wyoming Rules of Civil Procedure with respect to showing the plaintiff's address.[2]

---

1. For a non-resident attorney to practice law in this state without first associating with him an active member of the Wyoming State Bar is contrary to Rule 19 of the Rules for the Wyoming Bar Association, adopted by this court and authorized by the Wyoming State Legislature.

2. Rule 11, Wyoming Rules of Civil Procedure, entitled "Signing and Verification," reads in part as follows:

"(a) *Signing of Pleadings.* Every pleading of a party represented by an attorney shall be signed in his individual name by at least one attorney of record, licensed to

Motions to dismiss were filed attacking the above-mentioned defects, whereupon, on March 21, 1975, Hawkins was forced to enter an appearance and a "Substitution of Attorneys," which document substituted Hawkins for Keller as the attorney representing the plaintiff's side of the case. On the same date a Wyoming counsel was associated.

We observe, with disdain, that while these nefarious tactics were being employed, the good and heretofore unassailed reputations of the appellees had been, for nine months, under surreptitious attack in a reprehensible way through what now appears to have been the efforts of out-of-state attorneys practicing law in Wyoming through the employment of unauthorized and criticized procedures. We want attorney Hawkins to know, and all other out-of-state lawyers to be on notice, that this court does not sanction or condone devious and reprehensible game-playing with our citizens and our courts and we will deal harshly with such practices in these halls.

The named defendants having filed motions to dismiss the complaint on various grounds, also filed supporting affidavits under Rule 12(c) of the Wyoming Rules of Civil Procedure and requested that the motions to dismiss be considered as motions for summary judgment under Rule 56 of the aforementioned rules.

In support of their motions for summary judgment, the doctors filed factual and detailed affidavits describing the participation of each affiant in the plaintiff's case, delineating the details of the medical procedure, care, treatment and ministration. Each doctor expressed his opinion that the practices undertaken met and complied with the medical-care and treatment standards for like care and service at the time

and place administered. The affidavit of the hospital was likewise factual and in all ways adequate for summary judgment purposes.

The defendants, in March of 1975, notified the plaintiff's attorneys that argument would be had on April 8, 1975, on all motions to dismiss and for summary judgment.

On April 7, 1975, the day before the arguments were to be heard, the attorneys for appellant-plaintiff responded to the notice by requesting a continuance of the hearing date so that they would have time to undertake discovery. Up to this juncture, the plaintiff had initiated no discovery procedures whatever even though the case had been filed for nine months.

An order was entered on April 11, 1975, indicating a court-scheduling problem, and the arguments on motions to dismiss the complaint and for summary judgment were set over to May 2, 1975. No discovery was undertaken by the plaintiff during this extended timeperiod.

Prior to the entry of the above-mentioned order, Mr. Keller filed an affidavit and, his attorney, Mr. Charles F. Hawkins filed *his* affidavit in support of the plaintiff's motion for a continuance in order to complete discovery and as counter-affidavits in defense of the *motions for summary judgment*. This latter affidavit recites that Hawkins had sent Keller's medical records to some California doctors who, based upon hospital records only and without examination of or consultation with Keller, purported to make some unsworn hearsay expressions about the treatment Keller received in Casper. Hawkins appended to his affidavit two letters from these doctors which were addressed to him and dated in May and June of 1973, and

practice in this state, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. . . . "

Rule 4, Wyoming Rules of Civil Procedure, entitled "Process," reads in part as follows: "(b) *Same—Form*. The summons shall be signed by the clerk, be under the seal of the

court, contain the name of the court and the names of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, . . . "

which did not comply with the requirements of Rule 56(e) of the Wyoming Rules of Civil Procedure, infra. The Hawkins and Keller affidavits brought on motions to strike on various grounds, among which is that they do not meet the requirements of the aforesaid Rule 56(e).[3]

On May 2, 1975, the day the arguments on the various motions were to be heard, an order was entered assigning the cause to another judge. The court heard arguments on May 9, 1975, by which time there had still been no attempt to make discovery or to comply with Rule 56(e) concerning the filing of proper affidavits. Orders were entered denying the plaintiff's motion for continuance and granting all motions for summary judgment. Judgment was entered for all defendants on the order granting their motions for summary judgment. It is from this judgment and the order denying a continuance that the plaintiff appeals.

Appellant-plaintiff assigns the following issues for argument:

"I. Summary judgment is a drastic remedy and may be granted only when no material issue of fact is present.

"II. Plaintiff's affidavit was sufficient to show a genuine material issue of fact with respect to defendants' negligence.

"III. The circumstances surrounding plaintiff's injuries following hospitalization create an inference of defendants' negligence suffi-

cient to warrant the invocation of the doctrine of res ipsa loquitur.

"IV. Plaintiff was denied a reasonable opportunity to present all materials pertinent to a motion for summary judgment as provided for in Rule 12(c).

"V. The court abused its discretion in denying plaintiff additional time to supplement its responding papers pursuant to Rule 56(e).

"VI. Plaintiff made an adequate showing of unavailability of affidavits to be entitled to relief under Rule 56(f).

"VII. By withdrawing motions to strike affidavits in opposition to the motions for summary judgment, defendants waived their objections thereto."

We affirm the holding of the lower court and in so doing, examine each of the points raised by the appellant.

*Appellant's Point I:*

"I. Summary judgment is a drastic remedy and may be granted only when no material issue of fact is present."

■ There is no good purpose to be served in our discussing the cases cited by appellant in support of his first proposition. We agree with the doctrine absolutely. Especially is it true that summary judgment will not often be granted in a negligence case. *Forbes Company, Inc. v. MacNeel*, Wyo., 382 P.2d 56, 57 (1963).

3. Rule 56, Wyoming Rules of Civil Procedure is entitled "Summary Judgment." Subsection (e) is as follows:
"(e) *Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be *admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary judgment, if appropriate, shall be entered against him." [Emphasis supplied]

 Nevertheless, the counter-affidavits of the appellant were insufficient to make up an issue of material fact and therefore the entry of the summary judgment was proper. We said in *Guggenmos v. Tom Searl-Frank McCue, Inc.,* Wyo., 481 P.2d 48, 52 (1971), that where there are no material facts in dispute a summary judgment should be entered. This is the law—even in a negligence case.

*Appellant's Point II:*

."II. Plaintiff's affidavit was sufficient to show a geniune material issue of fact with respect to defendants' negligence."

 In essence, the mentioned affidavit of appellant says that he was hurt—was cared for and treated by various appellee-doctors and the hospital, and, as a consequence of their negligence, the right leg became gangrenous and had to be removed. The affidavit also relates that hospital records have been made available to California doctors who have advised appellant's attorney that the leg would not have been lost except for negligence and treatment of the appellees.

The affidavit of the appellant recites only conclusions of the affiant in the field of medical science and is composed of the rankest kind of hearsay. It does not comply with Rule 56(e), W.R.C.P., even remotely. The following from plaintiff's affidavit is exemplary of such conclusion and assertion of ultimate fact unsupported by competent material factual statements:

" . . . Following treatment, release and followup by Natrona County Memorial Hospital and the said doctors and attendants and as a consequence of their negligence and carelessness, and as a proximate result thereof, my right leg became putrid and gangrenous and eventually had to be surgically removed."

In *McClure v. Watson,* Wyo., 490 P.2d 1059, 1061–1062 (1971), we said that, not only could a party not rely upon conclusions in discharging his obligation of creating an issue of material fact, but furthermore such conclusions cannot be employed by the court in disposing of a motion for summary judgment.

We said in *Maxted v. Pacific Car and Foundry Company,* Wyo., 527 P.2d 832 (1974), that categorical assertions of ultimate facts without supporting evidence cannot be used to defeat a summary judgment.

Justice Guthrie, speaking for the court, said at page 834:

" . . . If categorical assertions of ultimate facts without supporting evidence could be used to defeat summary judgment this procedure would have no viability and would be contrary to the philosophy of Rule 56(e), W.R.C.P., and *Clouser v. Spaniol Ford, Inc.,* Wyo., 522 P.2d 1360, 1363. We have heretofore held the whole purpose of summary judgment would be defeated if the case could be forced to trial by a mere assertion that an issue exists, *McCamon v. Darnall Realty,* Wyo., 444 P.2d 623, 625; and that a party may not rely upon conclusions nor can they be employed in disposing of a motion for summary judgment, *McClure v. Watson,* Wyo., 490 P. 2d 1059, 1061–1062."

The following assertions from the affidavit of the appellant are hearsay and therefore insufficient to structure such an issue of fact as will withstand the onslaught of a motion for summary judgment:

" `ll of the medical records of Natrona Cou ^tv Memorial Hospital applicable to my admission, stay, treatment, care and followup procedures and relating to the individual Defendants in this cause have been furnished my attorney in San Diego, California who has caused them to be reviewed by Dr. F. L. Stutzman, a vascular specialist, Dr. Mark I. Congress, a general practitioner and Dr. Ward Wilson Woods, a neurologist; all of the said latter three physicians and surgeons have advised my attorney that my leg would not have been lost but for negligence and carelessness in the treat-

ment and followup; and each is willing to appear in Casper, Wyoming or elsewhere to testify that I was the victim of malpractice relating to my treatment and the followup care which I received." [4]

In *Cook Ford Sales, Inc. v. Benson,* Wyo., 392 P.2d 307, 309 (1964), we said that affidavits based on opinion, belief, conclusions of law, or *hearsay* statements do not comply with subdivision (e) of Rule 56, W.R.C.P.

We held in *Newton v. Misner,* Wyo., 423 P.2d 648, 650 (1967), that the material presented to the court by way of affidavit in summary judgment proceedings should be such as would be admissible in evidence at time of trial.

The plaintiff's affidavit does not meet the *Newton v. Misner* test or any of the other above-noted requirements. The statements therein contained are all inadmissible as calling for a conclusion and as hearsay.

We observe in passing, that attorney Hawkins filed his own affidavit "in opposition to motions for summary judgment" to which were attached the above-mentioned letters of Doctors Congress and Stutzman of California. These doctors, in their letters, and purportedly based upon an examination of hospital records only, did not even pretend to know or say what the standard of care and treatment at Casper, Wyoming was for a hospital and for doctors rendering similar and comparable services and treatment to one suffering injuries such as those experienced by Keller. These doctors did not charge *any* standard of care known to them to have been

violated by appellees.[5] Contrary to the assertion of Hawkins in his affidavit, Dr. Congress did *not* reach a "conclusion that there was negligence" on the part of any doctor or hospital.

Attorney Hawkins does not, in this appeal, urge his affidavit as constituting allegations sufficient to make up an issue of material fact under Rule 56(e), W.R.C.P. *Good thing.* It is even less qualified for such purposes than the affidavit of Keller. The Hawkins affidavit is hearsay and conclusionary in the extreme and the matters therein contained would not be admissible in evidence under any circumstances and, therefore, would not comply with the requirements of Rule 56(e), supra.

*Appellant's Point III:*

"III. The circumstances surrounding plaintiff's injuries following hospitalization create an inference of defendants' negligence sufficient to warrant the invocation of the doctrine of res ipsa loquitur."

Appellant says in his brief in support of Point III:

"On the basis of the pleadings and affidavits on file herein, summary judgment could not properly be granted on the issue of defendants' negligence because of the *inference* of negligence created by the circumstances surrounding plaintiff's postoperative development of a putrid and gangrenous condition. Although no expert medical testimony was introduced, the court should properly have taken *judicial notice* of the fact that when a person is under continuous medical care and supervision for the

---

4. It is only fair to observe here that the letters of Drs. Congress and Stutzman attached to the affidavit of Hawkins do *not* charge any doctor or the hospital with malpractice or negligence. There is *no* communication from the mentioned "Dr. Ward Wilson Woods" on file in the record of this case.

5. In a malpractice case where advice and disclosure were at issue, we said in *Govin v. Hunter,* Wyo., 374 P.2d 421, 424 (1962):

"Thus, it becomes apparent, in the case at bar, that since no expert medical testimony

was offered to show that Dr. Hunter's attention to his patient was substandard, or to show that ordinary medical care in the locality and under the circumstances of this case required more from him in the way of advice and disclosure to the patient than he gave, there remains no standard and consequently no evidence of a breach of that standard to submit to a jury."

treatment of a leg fracture, his leg does not ordinarily become putrid and gangrenous in the absence of medical negligence. Whether defendants herein are liable for such negligence is therefore a material issue of fact." [Emphasis supplied]

In other words, it is the appellant's contention that the doctrine of res ipsa loquitur should be invoked in a medical malpractice action by reason of the court's alleged duty to take judicial notice of unexplained scientific facts even though no supporting medical evidence is offered and, thereupon, draw an inference of negligence sufficient to withstand a motion for summary judgment.

This is not the law in Wyoming. We said in *Govin v. Hunter*, Wyo., 374 P.2d 421, 422 (1962):

"... [I]n order to sustain a claim for damages based upon malpractice or negligence on the part of a physician, the rule in this jurisdiction and in other jurisdictions generally has heretofore been that it is necessary for a plaintiff to prove by the evidence of competent experts that the injury complained of was caused by negligence. *Phifer v. Baker*, 34 Wyo. 415, 244 P. 637, 649. See also *Newman v. Zinn*, 3 Cir., 164 F. 2d 558, 560; *Stallcup v. Coscarart*, 79 Ariz. 42, 282 P.2d 791, 794; *Simone v. Sabo*, 37 Cal.2d 253, 231 P.2d 19, 22; and *DiFilippo v. Preston*, Del. [53 Del. (3 Storey) 539], 173 A.2d 333, 336."

In *McCoy v. Clegg*, 36 Wyo. 473, 257 P. 484, 499 (1927), we held, in an action against a doctor for malpractice in treating a broken collar bone, that the doctrine of res ipsa loquitur was inapplicable.

In *Stundon v. Stadnik*, Wyo., 469 P.2d 16 (1970), the patient-plaintiff sued the doctor for the loss of an eye which he contended was caused by the physician's negligent care and treatment commencing with a cataract operation. The trial court granted a motion for a directed verdict which was affirmed here.

In *Stundon* we held:

"We believe that the trial court was correct in granting defendant's motion for a directed verdict. Plaintiff failed to show any causal connection between defendant's alleged negligent acts and the plaintiff's injury. Proof of proximate causation is upon the plaintiff. *Lemos v. Madden*, 28 Wyo. 1, 200 P. 791, 794; *Shetter v. Rochelle*, 2 Ariz. App. 358, 409 P.2d 74, 83; *Woods v. Brumlop*, 71 N.M. 221, 377 P.2d 520, 522." Id., at 19–20.

The inference-of-negligence argument was made in *Stundon*, supra, and in rejecting the res ipsa loquitur doctrine, where no causal connection is made, we quoted with approval from *Ewing v. Goode*, S.D.Ohio, 78 F. 442, 443, to the following effect:

" ' * * * The naked facts that defendant performed operations upon her eye, and that pain followed, and that subsequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures. If the maxim, "Res ipsa loquitur," were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the "ills that flesh is heir to." ' " Id., at 22.

This is not to say that the doctrine of res ipsa loquitur is never applicable in a medical malpractice case. We said in *Stundon*:

"The application of the doctrine is allowed where the act or admission was negligent within the common knowledge of man, but the doctrine will not be applied where the determination of the alleged negligence is not within the common knowledge of man, and the plaintiff

must then establish and prove the lack of requisite care and skill by expert testimony. *Schofield v. Idaho Falls Latter Day Saints Hospital,* 90 Idaho 186, 409 P.2d 107, 109." Id., at 22.[6]

We further said:

"The doctrine of res ipsa loquitur is not applicable in malpractice actions in which the only proof is the fact that the treatment of the patient terminated with poor results. *DiFilippo v. Preston,* 53 Del. (3 Storey) 539, 173 A.2d 333, 339.

"The doctrine cannot be applied in a malpractice action arising out of surgery in absence of a causal nexus between an unfortunate result and the act of surgery. . . ." Id., at 22.

In the instant matter, we have only these facts which may be considered in this appeal: (1) the fact of the injury; (2) the treatment by the doctors and the care of the hospital; and (3) the fact of the loss of the leg. There is no competent, acceptable or admissible medical material factual showing that the treatment and care caused the loss of the limb. The problem is not of a nature which lends itself to solving through nonprofessional inquiry. For all we know, the leg would have been lost no matter what kind of care the patient received. We cannot guess about such matters.[7] We are not doctors. We know that a fractured right femur does not *ordinarily* result in the loss of a leg, but evidently it *sometimes* does. It did here—and we do not know why. It was the plaintiff's duty to point—with competent affidavit or discovery testimony—to the facts of negligence upon which he relied. He did not do this. The plaintiff did *nothing* to establish the causal connection between the care and the treatment and the loss of the leg and we cannot be expected to speculate about it.

For all of the same reasons that res ipsa loquitur cannot raise an inference of negligence when a cataract operation results in the loss of an eye, an inference of negligence will not be raised from the naked fact that a crushed leg resulted in its loss.

*Appellant's Point IV:*

"IV. Plaintiff was denied a reasonable opportunity to present all materials pertinent to a motion for summary judgment as provided for in Rule 12(c)."

Rule 12(c), W.R.C.P., to which appellant refers, provides:

"(c) *Motion for Judgment on the Pleadings.* After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The appellant cannot be serious in urging this position. In May and June of *1973,* Doctors Congress and Stutzman of California had been contacted by attorney

---

6. See *Jackson v. Hansard,* 45 Wyo. 201, 17 P.2d 659, 661 (1933), where we held that the causal connection between leaving a sponge in the plaintiff's body during the operation and the injuries claimed by him was for the jury.

7. In denying a petition for rehearing in a malpractice case in 1926, when the inference-argument was presented to this court in *Wright v. Conway,* 34 Wyo. 1, 51–52, 242 P. 1107, 1110–1111, Chief Justice Potter said:
" . . . *Guesswork cannot be substituted for evidence or inference, for 'an* inference is the conclusion drawn on reason from premises established by proof. In a sense, it is the thing proved. Guesswork is not.' Whitehouse v. Bolster, 95 Me. 458, 50 A. 240. . . . But an inference cannot be based upon a mere possibility or probability; it can only be based upon a fact proved, or something known to be true. Seavey v. Laughlin, 98 Me. 517, 57 A. 796. . . . "* [Emphasis supplied]

Hawkins about this case. It was in those months that they wrote Hawkins about their findings gleaned from Keller's hospital records. The motions to dismiss and for summary judgment were filed in March of *1975*. The hearing on the motions was not had until May 9, *1975*. In order to avoid the wrath of the court's order sustaining the motions for summary judgment, counsel for the appellant could have filed counter-affidavits by his doctors if in fact they were willing to testify that the Casper doctors and hospital had been negligent. Such affidavits were not filed even though there was more than adequate time for their preparation.

*Appellant's Point V:*

"V. The court abused its discretion in denying plaintiff additional time to supplement its responding papers pursuant to Rule 56(e)."

 As we have said, we find and hold that there was adequate time available to the plaintiff to prepare and file any and all necessary papers in response to the motions and supporting affidavits for summary judgment.

The court's discretion was not abused.

*Appellant's Point VI:*

"VI. Plaintiff made an adequate showing of unavailability of affidavits to be entitled to relief under Rule 56(f)."

Rule 56(f), W.R.C.P., provides:

"(f) *When Affidavits Are Unavailable*. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidivit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

 We do not find merit in the appellant's position that he should have had relief under Rule 56(f), and the court did not abuse its discretion in refusing it.

We have read and re-read attorney Hawkins' affidavit and the supporting letters of the California doctors. In the first place, the last-mentioned doctors do not charge the Casper doctors and hospital with negligence and malpractice or with violating any medical-care and treatment standards. In the second place, if those doctors were prepared to make such charges, there was adequate time for them to prepare factual affidavits in which conclusions to that effect could be expressed. No such affidavits were executed and there was no good and adequate showing that the affidavits were unavailable and why summary judgment should not be entered.

*Appellant's Point VII:*

"VII. By withdrawing motions to strike affidavits in opposition to the motions for summary judgment, defendants waived their objections thereto."

 The argument presumably is that by reason of the withdrwal of the motions to strike the defective affidavits, the court should now consider such affidavits as though they were qualified—competent and, in all respects, free of defect. The withdrawal of the motions to strike does not relieve the affidavits of the requirements expressed by this court to the effect that they must contain evidence which is as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial. *Newton v. Misner*, supra. Nor, by the withdrawal of the motions to strike, is the plaintiff relieved of the rule of this court expressed in *Cook Ford Sales, Inc. v. Benson*, supra, where we held that affidavits executed by non-professional witnesses and based on opinion, belief, conclusions of law or hearsay statements do not comply with subdivision (e) of Rule 56, W.R.C.P., supra, and should, therefore not be considered.

It is the duty of this court in all cases to determine if there is reasonable ground for an appeal and if it is determined that there was no such ground, to certify to this fact. Rule 72(k), W.R.C.P.; *Mader v. Stephenson,* Wyo., 552 P.2d 1114, 1115; *Nix v. Chambers,* Wyo., 524 P.2d 589, 590; *In re Brothers,* Wyo., 510 P.2d 19, 21.

It is our unqualified view that a competent lawyer cognizant of the laws of the State of Wyoming would have, upon examination of the record, determined that this was not a meritorious appeal and did not involve fair questions of law or substantial questions worthy of consideration. If Hawkins were willing to assume the responsibility of the prosecution of this case, he should also have assumed the duty of ascertaining the applicable law in this jurisdiction before undertaking this appeal. A review of this record reveals an unusual case and one which it is our ardent hope is not repeated. We make this observation because it was with great hesitation that we impose the following penalties, believing it proper only in the most aggravated cases.

The Clerk of this court is ordered to tax the appellant, as costs, fees, sanctions, penalties and damages, the following: The costs of all briefs filed by the appellees, and to inform the appellant and his attorney, Hawkins, of such costs when ascertained; $300.00 for counsel for appellees; and $500.00 penalty and damages to the appellees.

We herewith notify all concerned that the necessity for assessing these costs, penalties, damages and sanctions comes on as a direct result of the fault of California counsel's handling of this case.

Affirmed.