Pamela Sue SIEBERT and Raymond Siebert, Appellants (Plaintiffs),

v.

Nathaniel E. FOWLER, M.D., Appellee (Defendant).

No. 5529.

Supreme Court of Wyoming.

Dec. 7, 1981.

William D. Norman, Casper, for appellants.

Michael J. Sullivan and David G. Lewis, of Brown, Drew, Apostolos, Massey & Sullivan, and R. R. Bostwick of Murane & Bostwick, Casper, for appellee.

Before RAPER, THOMAS, ROONEY and BROWN, JJ., and GUTHRIE, J., Ret.

ROONEY, Justice.

Appellants-plaintiffs appeal from a summary judgment in favor of appellee-defendant in a malpractice case against a medical doctor. Appellant, Pamela Sue Siebert, is a diabetic. She sought treatment from appellee, an ophthalmologist in Casper, for a "floater" or blood in the vitreous of her eye (a common occurrence in diabetic cases). Appellants contend that appellee was negligent in the treatment afforded to her by him.[1] On appeal, appellants contend that

---

1. The complaint alleges that appellee's negligence consisted of:

"(a) delegating medical decisions to subordinates without the ability to determine the potentiality of retinal separation.

"(b) failure to utilize diagnostic techniques peculiar to Defendant's specialty which would have indicated the potentiality of retinal separation.

"(c) failure to make thorough, adequate and competent examinations of Plaintiff as were required in this case.

"(d) failure to recognize the symptoms of Plaintiff that developed during the course of his treatment.

"(e) failure to obtain the services of a specialist qualified in a method of treatment

an affidavit of Lemuel T. Moorman, M.D.,[2] filed by appellee in support of the motion for summary judgment did not sufficiently reflect proposed evidence which would necessitate a judgment for appellee if such evidence were not controverted. And if it did so, appellants contend that an affidavit of Kenneth R. Fox, M.D.[3] filed in opposition to the motion for summary judgment, together with deposition evidence, reflected the existence of controverting evidence, thus establishing issues of material facts.

We affirm.

The pertinent part of Rule 56(c), W.R. C.P., which concerns summary judgments, provides:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

■ We recently reviewed the application of this rule to medical malpractice cases in *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980); in *Harris v. Grizzle*, Wyo., 625 P.2d 747 (1981); and in *Vassos v. Roussalis*, Wyo., 625 P.2d 768 (1981). We will not here repeat the procedural requirements and rationale contained therein, but will note some of the conclusions there reached:

1. The standard of care required of physicians and surgeons is that they must exercise the skill, diligence and knowledge, and must apply the means and methods, which would reasonably be exercised and applied under similar circumstances by members of their profession in good standing and in the same line of practice.

2. Expert medical testimony in the form of opinions is necessary[4] to assist the jury (a) in ascertaining the skill, knowledge, means and methods required under the circumstances of the case to meet such standard of care, (b) in determining whether or not the defendant conformed thereto, and (c) in determining whether or not the defendant's conduct was the legal cause of the injuries suffered.

3. A showing of injury, the treatment provided, and the fact of loss are insufficient to defeat a motion for summary judgment.

4. The burden of showing the absence of a genuine issue of a material fact is upon the party moving for a summary judgment.

5. We examine the record from a viewpoint most favorable to the party opposing the motion for a summary judgment, giving to him all favorable inferences to be drawn from the facts therein.

■ Applying the foregoing to the record in this case, we find that appellee presented proposed evidence in proper form through the affidavit of Dr. Moorman that the medical care given to appellant Pamela Sue Siebert, in his opinion, conformed to the required standard of care. If this evidence was not controverted, a genuine issue would not exist. The fact as to whether or not the standard of care was met is not only a material issue, but is the controlling issue in the case. If this matter proceeded to trial and Dr. Moorman testified as set forth in his affidavit and controverting evidence were not presented, appellee would be entitled to a directed verdict.

Therefore, in order to prevent the entry of a summary judgment against them, the record must reflect evidence, proposed in proper form, to the effect that the required standard of care was not met by appellee in the medical care given to appellant Pamela Sue Siebert, or, said the other way, that the

---

which Defendant was not competent to provide."

**2.** Dr. Moorman is an Ophthalmologist from Denver, Colorado, with subspecialty in consultation and surgery of retinal disease.

**3.** Dr. Fox is an Ophthalmologist from Arlington, Virginia, practicing within the subspecialty

of diseases and surgery of the retina and the vitreous.

**4.** An exception is recognized when the conduct is so obviously wanting in reasonable medical skill and prudence that it may be so adjudged by laymen to be negligent.

medical care afforded to appellant Pamela Sue Siebert did not meet the required standard of care.

Examination of the record in *Vassos v. Roussalis*, supra, revealed counter affidavits by medical experts in which they found the care given the plaintiff did not, in their opinion, meet the required standard of care. The resulting factual issue prevented a proper summary judgment. The records in *Harris v. Grizzle*, supra, and *Bancroft v. Jagusch*, supra, did not contain such counter evidence proposed in proper form. Summary judgments were there proper.

█ The record in this case, as in *Harris* and in *Bancroft*, is without evidence, proposed in proper form, to reflect that the standard of care was not here met by appellee. The affidavit of Dr. Fox recites that he is "familiar with the standards of Medical Practice for the specialty of Ophthalmology" and that he has "reviewed documentation relevant to" appellant Pamela Sue Siebert's case, but he does not state that in his opinion the care afforded to her by appellee did not meet the required standards. He stated:

"Mrs. Siebert did *appear* to have developed proliferative Diabetic Retinopathy in both eyes by November 29, 1977, when examined in Denver, Colorado by Dr. William Jackson;

"Mrs. Siebert *probably* had evidence of proliferative Diabetic Retinopathy in Caspar, [sic] Wyoming by October 18, 1977 when examined there by Dr. Nathaniel Fowler;

"That the laser treatments afforded the right eye in Denver, by Dr. Jackson, to Mrs. Siebert, *might have been* appropriate for the left eye too, if the condition could have been seen earlier by Dr. Jackson, or others, and that such a treatment *would have been designed* to prevent further hemorrhage in front of the retina, as occurred in Mrs. Siebert's left eye by November 10, 1977;

"That Mrs. Siebert had had Diabetes for over twenty years by 1977, making Diabetic Retinopathy, in a juvenile-onset Diabetic, *most likely*; and

"That Diabetes is a recognized precursor of branch retinal vein occlusions." (Emphasis added.)

He does not state that, in his opinion, appellee did not meet the required standard of care. He does not say that one with the requisite skill, diligence and knowledge would have recognized the evidence of "proliferative Diabetic Retinopathy" on October 18, 1977 and November 29, 1977, or that such one would have given care other than that given by appellee. He says that the laser treatments "might have been appropriate" if seen earlier by Dr. Jackson, but he does not say that one with the requisite skill, diligence and knowledge would have referred appellant Pamela Sue Siebert to Dr. Jackson at an earlier time.

Similarly testimony in the depositions to which appellants refer us does not pertain to the central issue. The recitations by the parties in the depositions of the contacts between them, the symptoms related to appellee by appellants and the nature of his examinations and findings do not address the question as to whether or not appellee was applying the requisite skill, diligence and knowledge under the circumstances.

"We held in *Keller v. Anderson*, supra [Wyo., 554 P.2d 1253 (1976)], that a showing of injury, the treatment provided, and the fact of the loss are insufficient to defeat a motion for summary judgment. In *Keller* there was no admissible medical testimony to show that the treatment was the cause of the plaintiff's injury. We said,

"'* * * The problem is not of a nature which lends itself to solving the non-professional inquiry. For all we know, the leg would have been lost no matter what kind of care the patient received. We cannot guess about such matters. We are not doctors.' *Keller v. Anderson*, supra, at 1261." *Harris v. Grizzle*, supra, 625 P.2d at 751.

█ A summary judgment is designed to pierce the formal allegations and reach the merits of the controversy when there is present no issue of material fact. *Weaver*

*v. Blue Cross-Blue Shield of Wyoming,* Wyo., 609 P.2d 984 (1980). Appellants have failed to controvert the material facts set forth in the affidavit of Dr. Moorman, i.e., that appellee acted with the requisite skill, diligence and knowledge in his treatment and care of appellant. The evidence proposed in proper form by appellants concerns the nature of the injury, the treatment provided and the fact of loss, but it does not propose, in proper form, professional evidence that appellee did not afford care and treatment to appellant Pamela Sue Siebert with requisite skill, diligence and knowledge or that such care and treatment caused or contributed to the injuries.

Affirmed.