[No. 2759–3. Division Three. January 9, 1979.]

ANN M. KEOGAN, *as Administratrix,* ET AL, *Appellants,* v. HOLY FAMILY HOSPITAL, ET AL, *Respondents.*

*Vovos & Voermans, Mark E. Vovos, Sullivan, Morrow & Longfelder,* and *Albert Morrow,* for appellants.

*Halverson, Applegate & McDonald, Alan A. McDonald, MacGillivray & Jones, Frank H. Johnson,* and *Gregory G. Frazier,* for respondents.

Munson, J.—Tim Keogan, a 37–year–old attorney, died of a heart attack on March 6, 1972. Ann Keogan, his wife, and his children[1] appeal a jury verdict in favor of defendants, hospital and doctors, Snyder and Appel, in an action for malpractice.[2] The pertinent facts will be discussed as they apply respectively to each doctor. The issues presented on appeal are whether the trial court erred in (1) denying a motion for a partial directed verdict and a proposed instruction on informed consent, and (2) denying a motion for a directed verdict and proposed instructions on negligence as a matter of law.

---

[1]Although we refer only to Ann Keogan, the children are also parties to this action.

[2]Under the doctrine of respondeat superior, the hospital is liable only if Dr. Appel is liable.

DR. SNYDER:

On February 16, 1972, Tim Keogan visited Dr. Snyder, a general practitioner, and described recurring chest pain which had begun the end of January upon exertion and exposure to cold weather. Dr. Snyder reviewed Keogan's medical history and found he had had gastrointestinal problems 8 years earlier. Keogan mentioned that members of his family had recently had the flu. Dr. Snyder testified that Keogan appeared "entirely normal," had no chest pain while he was in the office, and his vital signs were normal. Dr. Snyder took a chest X-ray, gave Keogan a resting electrocardiogram (EKG) and took cardiac enzyme tests.[3] Dr. Snyder discussed with Keogan the purpose of the tests, mentioned the possibility of a heart problem and scheduled another office appointment.

When Keogan returned for his second office call on February 29, Dr. Snyder testified his appearance was normal; he did not complain of pain on exertion but did complain of severe pain after eating, with nausea and diarrhea. Dr. Snyder gave him another resting EKG, repeated the cardiac enzyme tests and prescribed an antacid. He also prescribed sorbitrate, a nitrate similar to nitroglycerin, but slower acting, generally used as a therapeutic medication rather than a diagnostic one according to expert testimony.

Dr. Snyder discussed with Keogan the results of the prior cardiac enzyme tests, which were slightly abnormal, and the EKG, which was normal. Dr. Snyder told Keogan he was prescribing the sorbitrate for pain. He did not discuss the possibility of either a treadmill EKG or an angiogram (a heart catheterization procedure) on either visit. Appellant contends that Dr. Snyder's failure either to conduct such tests or disclose to Keogan the availability of the procedures was negligence as a matter of law. Thus, a directed verdict should have been granted or an instruction setting forth the same should have been given.

---

[3] The EKG and cardiac enzyme tests are used to detect heart abnormalities.

■■ The first issue is whether a duty to inform had arisen. A physician has the duty to inform a patient of all material risks or facts which reasonably should be known if the patient is to make an informed and intelligent decision to submit to a proposed course of treatment. *ZeBarth v. Swedish Hosp. Medical Center,* 81 Wn.2d 12, 499 P.2d 1, 52 A.L.R.3d 1067 (1972); *Miller v. Kennedy,* 11 Wn. App. 272, 522 P.2d 852 (1974); *Hunter v. Brown,* 4 Wn. App. 899, 484 P.2d 1162 (1971); *Mason v. Ellsworth,* 3 Wn. App. 298, 474 P.2d 909 (1970). The scope of the physician's duty to inform a patient concerning proposed or alternative treatment is measured by the patient's right to know. *Miller v. Kennedy, supra* at 283. The elements which must exist to impose liability upon a physician under the informed consent doctrine are (1) a duty to inform, (2) the failure to inform, (3) evidence that if informed the patient would have chosen a different course of action, and (4) injury resulting from the treatment. *Holt v. Nelson,* 11 Wn. App. 230, 242, 523 P.2d 211, 69 A.L.R.3d 1235 (1974).

Appellant relies heavily on *Miller v. Kennedy, supra,* in support of her contention that Dr. Snyder had the duty to inform; however, we find the facts distinguishable. In *Miller,* the doctor performed a kidney biopsy but did not inform the patient of the risk of the loss of the kidney or of alternative ways of performing biopsies. The biopsy caused the loss of the kidney. The doctor had embarked on a surgical procedure without full disclosure of the risk and alternatives. The court held the doctor had the duty to inform.

■ The crucial factor involved in the doctrine of informed consent is the reasonably foreseeable risk to the patient of a proposed course of treatment. Respondent contends that since Dr. Snyder had not yet made a diagnosis, there was no duty to inform. We disagree. Even if a doctor has not specifically diagnosed a medical problem, if the doctor embarks on a diagnostic procedure which entails a reasonably foreseeable risk to the patient, the patient must be informed of the risk and possible alternatives. *See*

*Mason v. Ellsworth, supra.* Conversely, if there is no diagnosis nor diagnostic procedure involving risk to the patient, there is nothing the doctor can put to the patient in the way of an intelligent and informed choice. *Meeks v. Marx,* 15 Wn. App. 571, 550 P.2d 1158 (1976).

In the course of two office calls within a 2–week period, Dr. Snyder was presented with numerous possibilities ranging from a gastrointestinal problem to heart disease. He conservatively treated both, but he had made neither a diagnosis nor pursued a course of treatment involving a risk to his patient. Under these circumstances, no duty to inform had yet arisen and no instruction was required.

 The second issue raised by the appellant and closely related to the duty to inform is whether the jury should have been instructed as a matter of law that Dr. Snyder failed to disclose to Keogan material facts relating to his medical condition including his treatment, alternative treatment, and the risks of each or no treatment at all. Appellant submitted an instruction to that effect which the trial court denied. In 1972, three tests existed which were used to diagnose angina pectoris: nitroglycerin, treadmill EKG, and an angiogram. There was considerable conflicting testimony on how widely the treadmill EKG and the angiogram were used in general practice in 1972. Appellant contends these facts "withheld by Dr. Snyder" would have been crucial to a reasonable, prudent person in Tim Keogan's situation. Essentially, appellant's position is that as a matter of law, Dr. Snyder should have disclosed all possible diagnostic procedures. The doctrine of informed consent and the duty to disclose have not been so broadly applied.

In *Gates v. Jensen,* 20 Wn. App. 81, 579 P.2d 374 (1978), plaintiff requested an instruction on informed consent due, in part, to the doctor's failure to perform or apparently disclose certain diagnostic tests. The court held that the doctrine of informed consent "should not be enlarged so as to include problems of mistaken diagnosis. . . . If the defendants were at fault in failing to perform the other

tests, then their failure to adhere to the medical standard of care is available to provide the plaintiffs with a remedy." *Gates v. Jensen, supra* at 87. We find the court's instructions were adequate to inform the jury of the standard of care required of Dr. Snyder.

▮ Appellant contends that because Dr. Snyder failed to conduct existing tests and, by his own testimony, deviated from the standard of care, a directed verdict should have been made or an instruction given that Dr. Snyder was negligent as a matter of law. Negligence as a matter of law has rarely been found in medical malpractice cases except where surgical instruments have been left in a patient after surgery. *See Conrad v. Lakewood Gen. Hosp.*, 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966); *Swanson v. Brigham*, 18 Wn. App. 647, 571 P.2d 217 (1977); *Stone v. Sisters of Charity*, 2 Wn. App. 607, 611, 469 P.2d 229 (1970). After a review of the purported admission by Dr. Snyder, we conclude that the testimony cited was taken out of context. There was conflicting testimony among the experts on the standard of care and the question was properly submitted to the jury. "The trier of fact is entitled to accept or reject the opinion testimony of any expert where his testimony conflicts with the opinion of another." *Thornton v. Annest*, 19 Wn. App. 174, 178, 574 P.2d 1199 (1978). This court will not substitute its judgment for that of the trier of fact upon a disputed issue of fact. *Udhus v. Peglow*, 55 Wn.2d 846, 350 P.2d 640 (1960).

Dr. Appel:

▮ Tim Keogan arrived by ambulance at Holy Family Hospital at 4 a.m. March 6, 1972. Dr. Appel was the emergency room doctor on duty at that time. Appellant contends that Dr. Appel was negligent as a matter of law for not giving Keogan an EKG upon his arrival, or shortly thereafter. Dr. Appel testified that on the basis of his telephone conversations with Dr. Snyder and his own observations, he believed Keogan was suffering from gastritis. A wrong diagnosis by itself is not negligence and is actionable only when it is the result of negligence and followed by

improper treatment to the injury of the patient. *Skodje v. Hardy,* 47 Wn.2d 557, 288 P.2d 471 (1955). Although almost all of the experts believed Keogan was suffering from a heart attack when he reached the hospital, there was conflicting testimony as to whether anything could have been done in 1972, even if an EKG had quickly diagnosed the problem. In an action for malpractice the plaintiff must establish that an act or omission by a physician has breached a standard of care and that the breach was the cause, both in fact and proximately, of the damage suffered by the patient. *Hayes v. Hulswit,* 73 Wn.2d 796, 440 P.2d 849 (1968); *Hoglin v. Brown,* 4 Wn. App. 366, 481 P.2d 458 (1971); *Stone v. Sisters of Charity, supra.* Even if, as appellant contends, the testimony was undisputed that Dr. Appel breached the standard of care in 1972 in not giving an EKG, whether that omission caused further damage to Keogan was disputed by the experts and was therefore a question of fact which was properly submitted to the jury. We find no error by the trial court in denying a directed verdict or plaintiff's proposed instructions on negligence as a matter of law.

Judgment affirmed.

GREEN, C.J., and McINTURFF, J., concur.