[No. 2759-3. Division Three. November 1, 1979.]

ANN M. KEOGAN, as *Administratrix*, ET AL, *Appellants*, v. HOLY FAMILY HOSPITAL, ET AL, *Respondents*.

*Mark E. Vovos, Vovos & Voermans, Albert Morrow, Donovan R. Flora,* and *Sullivan, Morrow & Longfelder,* for appellants.

*Alan A. McDonald, Halverson, Applegate & McDonald, Frank H. Johnson, Greg G. Frazier,* and *MacGillivray & Jones,* for respondents.

MUNSON, J.—This matter is before the court on appellants' motion for reconsideration[1] of *Keogan v. Holy Family Hosp.,* 22 Wn. App. 366, 589 P.2d 310 (1979), where we held that refusal of the trial court to give an instruction on the doctrine of informed consent was not error. In a case decided shortly thereafter, *Gates v. Jensen,* 92 Wn.2d 246, 595 P.2d 919 (1979), it was held reversible error not to give

---

[1]The motion was timely filed, but disposition was suspended pending Supreme Court review of *Gates v. Jensen,* 20 Wn. App. 81, 579 P.2d 374 (1978). Thereafter, counsel were asked for their comments on the applicability of *Gates* to this case.

an instruction on informed consent. Appellants argue that the holding in *Gates v. Jensen,* 92 Wn.2d 246, 595 P.2d 919 (1979), should control here. We find the facts of the two cases distinguishable; here the duty to disclose had not yet arisen.

In May 1972, Mrs. Gates, age 54, consulted an ophthalmologist because she had "difficulty in focusing, blurring, and gaps in her vision." She also had severe myopia which increased her risk of glaucoma. The doctor performed two tests, one of which indicated borderline glaucoma. He failed to administer two simple, inexpensive and risk–free tests. These tests included simply putting drops in Mrs. Gates' eyes, and giving her a visual field examination, which she contended would have conclusively determined that she had glaucoma. Over the next 2 years Mrs. Gates revisited the clinic 12 times with the same complaint. Two years after her initial visit, the doctors diagnosed Mrs. Gates as having glaucoma.

The court in reaffirming its position in *Helling v. Carey,* 83 Wn.2d 514, 519 P.2d 981, 67 A.L.R.3d 175 (1974), another glaucoma case, held:

> The physician's duty is to tell the patient what he or she needs to know in order to make [an informed decision]. The existence of an abnormal condition in one's body, the presence, of a high risk of disease, and the existence of alternative diagnostic procedures to conclusively determine the presence or absence of that disease are all facts which a patient must know in order to make an informed decision on the course which future medical care will take.

*Gates v. Jensen, supra* at 250–51.

Here, Dr. Snyder, a general practitioner, administered a resting electrocardiogram and took cardiac enzyme tests after his patient complained of chest pain. He discussed with Keogan the possibility of a heart problem. Dr. Snyder saw his patient on only two occasions within a 2–week period and the symptoms were inconclusive. At least one expert testified that there are 200 different causes of chest

pain, only three of which are referable to the heart. Appellants argue that the doctor should have told Keogan of an angiogram and a treadmill EKG; neither, however, was used extensively by general practitioners in 1972. Furthermore, angiography is neither simple, inexpensive nor risk free.

Although the cardiac enzyme tests were slightly abnormal, the resting EKG indicated Tim Keogan's heart was normal. Dr. Snyder had no other simple, risk–free tests which would have conclusively determined the absence or presence of disease; nor do appellants contend that those tests which could have been administered fall into that category. Mrs. Gates was treated over a period of 2 years; Tim Keogan saw Dr. Snyder twice and died 3 weeks after his first office visit. Mrs. Gates' symptoms and the test result pointed to only one possible disease—glaucoma—which could have been easily and inexpensively determined in the doctor's office. Keogan's symptoms presented a host of possibilities. It is not for this court to dictate the diagnostic procedures to be used in such a complicated area as heart disease and apply hindsight to a problem which presented confusing and inconclusive symptoms to two physicians.

As noted in *Gates v. Jensen, supra* at 250:

> The patient's right to know is not confined to the choice of treatment once a disease is present and has been conclusively diagnosed. Important decisions must frequently be made in many nontreatment situations in which medical care is given, including procedures leading to a diagnosis, as in this case.

In a situation involving simple, risk–free procedures which would conclusively determine the presence or absence of glaucoma, the court's comment is apropos. But as we noted in *Keogan v. Holy Family Hosp., supra,* the symptoms which Keogan exhibited ranged from gastrointestinal problems to heart disease. Dr. Snyder conservatively treated both, but he had neither made a diagnosis nor pursued a course of treatment involving a risk to his patient. Under these circumstances, no duty to inform had yet arisen and

586

no instruction was required. *Keogan v. Holy Family Hosp.,* *supra* at 370. Given the facts of this case, we believe the above statement is still applicable.

As to other matters raised by the post–opinion motion, we adhere to our original opinion.

Motion for reconsideration is denied.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied November 1, 1979.

Review granted by Supreme Court January 18, 1980.