Andrew Lawrence HARRIS, the Personal Representative, Administrator, for the Deceased, Diane Geraldine Harris, Appellant (Plaintiff),

v.

Claude O. GRIZZLE; William F. Flick; Phillip M. Sharp; Memorial Hospital of Laramie County, Wyoming; William C. Nichols, in his official capacity as Administrator of Memorial Hospital of Laramie County, Wyoming; Harry P. Smith, F. Dean Stevens, John Pattno, Fred Baggs, and Carl Emerich, all in their official capacities as Members of the Board of Trustees of Memorial Hospital of Laramie County, Wyoming; and the Board of Trustees of Memorial Hospital of Laramie County, Wyoming, Appellees (Defendants).

No. 5328.

Supreme Court of Wyoming.

March 20, 1981.

Barbara Beck, Cheyenne, signed the brief and appeared in oral argument on behalf of appellant.

Donald J. Sullivan, Fennell-Sullivan, Cheyenne, signed the brief of appellee Grizzle. Todd S. Welch, Godfrey & Sundahl, Cheyenne, and Joseph C. Jaudon, Long & Jaudon, P. C., Denver, Colo., signed the brief of appellee Flick. J. Kent Rutledge, Lathrop & Uchner, P. C., Cheyenne, signed the brief of appellee Sharp. G. Joseph Cardine, Casper, signed the brief of appellees Memorial Hospital and the Bd. of Trustees of Memorial Hospital.

Before ROSE, C. J.*, McCLINTOCK, RAPER ** and THOMAS, JJ., and BROWN, District Judge.***

BROWN, District Judge.

On May 22, 1975, Diane Harris, appellant's decedent, was involved in an automobile accident in which she sustained severe brain damage resulting in her total paralysis.

Mrs. Harris was initially treated May 22, 1975, through September 29, 1975, at Memorial Hospital of Laramie County. She was readmitted to Memorial Hospital of Laramie County on May 17, 1976, for tests and examination, and released on June 12, 1976. She was cared for during her hospitalization by Doctors Grizzle and Sharp. On May 9, 1976, and July 23, 1976, Mrs. Harris was seen by Dr. Flick in the emergency room of appellee hospital, and examined and released without hospitalization. On August 1, 1976, Diane Harris died at her home.

This action was instituted by appellant, Andrew Lawrence Harris, to recover from Doctors Claude O. Grizzle, William F. Flick and Phillip M. Sharp, and Memorial Hospital of Laramie County, Wyoming (including its administrator and board of trustees in their respective official capacities). The appellant, Harris, claims damages from the hospital and physicians based upon their alleged negligent care, treatment, diagnosis, and examination of the decedent during her hospitalization and two visits to the emergency room.

On January 11, 1980, appellee Sharp filed a motion for summary judgment. This was

* Chief Justice since January 5, 1981.

** Chief Justice at time of oral argument.

*** ROONEY, J., having recused himself, BROWN, D. J., was assigned.

followed by similar motions by the other appellees.

Sharp's motion was heard on January 22, 1980; the motions of all other appellees ,were heard February 8, 1980. At the conclusion of the hearing on January 22, 1980, the court took under advisement Sharp's motion for summary judgment.[1] At no time prior to the hearing on February 8, 1980, did appellant Harris serve affidavits or any other materials in opposition to the motions for summary judgment filed by the respective appellees. Subsequently, the court granted summary judgment for all appellees.

We will affirm.

During the hearing of the three appellees' motions for summary judgment on February 8, 1980, appellant Harris proffered a memorandum brief, the affidavit of decedent's mother, Virginia Rivera, and affidavits of Robert B. McFarland, M.D. Appellant relies on these affidavits, answers contained in his deposition, and on alleged factual disputes or issues contained in appellees' own affidavits as raising a question of fact sufficient to avoid a summary judgment.

In appellant's brief on appeal, he designates the following issues:

1. Do the husband's sworn statements establish genuine issue of material fact?

2. If expert testimony is necessary, is it mandatory that it be filed one day before the summary judgment hearing?

3. Do the appellees establish a material issue of fact?

■■■ As background for our analysis of the issues, we note several basic rules of law applicable to medical malpractice actions. The gist of a malpractice action is negligence on the part of defendant. The mere fact of injury or the occurrence of a bad result, standing alone, is no proof of negligence in the ordinary malpractice action. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty by a doctor proximately causing injury to the patient. *Baylor v. Jacobson*, 170 Mont. 234, 552 P.2d 55, 58 (1976).

## FILING AFFIDAVITS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Appellees were involved in different ways and at different times in the care and treatment of the deceased. It is not necessary to specify each appellee's individual involvement in the care and treatment of the deceased since our determination of the issues raised on appeal applies to all appellees, regardless of such involvement.

The motions for a summary judgment filed by the respective appellees were accompanied by affidavits adequate for summary judgment purposes. When these motions were filed, appellant became obligated to offer competent evidence that would be admissible at trial showing that there were genuine issues of material fact. Rule 56(e), W.R.C.P.[2]; Wright & Miller, Federal Prac-

1. Appellant asserts that at the conclusion of this hearing the trial judge continued the hearing. For the purpose of the issues raised in this case, it is immaterial whether the trial judge took the motion for summary judgment under advisement or continued the hearing.

2. Rule 56, Wyoming Rules of Civil Procedure, entitled "Summary Judgment," subsection (e) is as follows:

"(e) *Form of affidavits; further testimony; defense required.*—Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond summary

tice and Procedure: Civil § 2739; *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342 (1979); *Keller v. Anderson*, Wyo., 554 P.2d 1253 (1976); *Mealey v. City of Laramie*, Wyo., 472 P.2d 787 (1970); *Newton v. Misner*, Wyo., 423 P.2d 648 (1967). Appellant failed to meet this burden.

■ The affidavits offered by appellant at the February 8, 1980, hearing were not timely offered and were, therefore, properly refused. Rule 56(c)[3] and Rule 6(d)[4], W.R.C.P., provide that opposing affidavits be served at least one day prior to the hearing on the motion for a summary judgment. *DeHerrera v. Memorial Hospital of Carbon County*, supra. Appellant failed to comply with these rules.

■ If opposing affidavits cannot be filed, the party opposing the motion for a summary judgment may file an affidavit pursuant to Rule 56(f), W.R.C.P.,[5] setting forth the reasons why he cannot file an opposing affidavit. The party opposing a motion for a summary judgment may also or in the alternative file a motion pursuant to Rule 6(b), W.R.C.P.,[6] requesting enlargement of the time in which to file the affidavits. A motion requesting enlargement provided for in Rule 6(b) must be filed before the expiration of the time originally prescribed (or extended by previous order). Appellant did not avail himself of the relief provided for in Rule 56(f) nor in Rule 6(b), W.R.C.P.

■ Rule 6(b), W.R.C.P., further provides that upon motion made after the originally prescribed or extended period, the court may permit the act to be done if excusable neglect is shown. Appellant made no showing of excusable neglect nor good cause for his failure to file the motion contemplated by this rule. *Crossan v. Irrigation Development Corporation*, Wyo., 598 P.2d 812 (1979). The trial court was justified in refusing to consider affidavits offered on the day of the hearing on the motions for summary judgment.

Appellant asserts that under Rule 56, W.R.C.P., the trial court has wide discretion in ordering or allowing further discovery. Appellant, in fact, appeals to the discretion of the lower court with respect to filing late affidavits. Ironically, at no time does appellant suggest that the trial court abused its discretion. We must assume, therefore, that appellant concedes that the trial court did not abuse its discretion. This concession, standing alone, is dispositive of the issue raised on appeal. Further, we find nothing in the record to suggest that the trial court abused its discretion.

judgment, if appropriate, shall be entered against him."

3. Rule 56, Wyoming Rules of Civil Procedure, entitled "Summary Judgment," subsection (c) reads in part as follows: "* * * The adverse party prior to the day of hearing may serve opposing affidavits. * * *"

4. Rule 6, Wyoming Rules of Civil Procedure, entitled "Time," subsection (d) reads in part as follows:

"* * * [A]nd, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time."

5. Rule 56, Wyoming Rules of Civil Procedure, entitled "Summary Judgment," subsection (f) is as follows:

"(f) *When affidavits are unavailable.* —Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

6. Rule 6, Wyoming Rules of Civil Procedure, entitled "Time," subsection (b) reads in part as follows:

"(b) *Enlargement.*—When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court, or a commissioner thereof, for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; * * *."

In passing, we note that even had the affidavits of Dr. McFarland and the affidavit of Virginia Rivera been timely filed, they are insufficient as a matter of law. Rule 56(e) requires that affidavits shall be made on personal knowledge and shall be based on competent evidence. Appellant's proffered affidavits are but hearsay on hearsay: Dr. McFarland's testimony was based upon what he heard from appellant's attorney who was relating narration from the appellant. Mrs. Rivera's testimony is hearsay. Furthermore, her affidavit fails to meet the Rule 56(e) requirement that it, "show affirmatively that the affiant is competent to testify to the matters stated therein." Only an expert medical witness is competent to testify as to medical matters. Mrs. Rivera, not being a medical expert, is incompetent to testify as to these matters. See *Keller v. Anderson*, supra.

An examination of Dr. McFarland's affidavits reveals that a modicum of foundation may have been admissible at trial in support of an opinion. The affidavits must, nevertheless, be rejected because it is impossible to tell which part of his opinion is based on competent evidence and which part is based on impermissible hearsay or suggestions from counsel.

The Kansas Supreme Court recently disallowed testimony which was not personally found by the testifying physician, stating as follows:

"In *Mesecher v. Cropp*, 213 Kan. 695, 701–2, 518 P.2d 504 (1974), an examining physician was allowed to testify about findings made in a report prepared by a neurosurgeon who was not at trial. The appellate court noted that those facts or data were not perceived by or personally known to him, nor were they made known to him at the hearing in any acceptable way. The court concluded that the testimony was inadmissible." *In the Interest of Marie Ann Watson*, Kan.App., 615 P.2d 801, 803, 804 (1980).

## EXPERT EVIDENCE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Having determined that the affidavits offered by appellant were properly refused by the trial court, it is now necessary to determine if the evidence contained in the appellant's deposition and the affidavits of appellees was sufficient to establish an issue of material fact.

Appellant stated in his deposition that the deceased was not fed while in the hospital and that a gastrostomy tube was inserted incorrectly, causing a condition that led to the death of Mrs. Harris. Appellant further contends that some appellee expert witnesses stated that the cause of death was pneumonia, while other appellee expert witnesses specified a different cause of death. Appellant contends that statements in his deposition and the doctors' different opinions in their affidavits as to the cause of death establish a question of fact sufficient to defeat appellees' motions for summary judgment. Such an argument ignores, among other things, the fact that appellant has failed to establish a causal connection between appellees' actions and decedent's death.

We held in *Keller v. Anderson*, supra, that a showing of injury, the treatment provided, and the fact of the loss are insufficient to defeat a motion for summary judgment. In *Keller* there was no admissible medical testimony to show that the treatment was the cause of the plaintiff's injury. We said,

"* * * The problem is not of a nature which lends itself to solving through nonprofessional inquiry. For all we know, the leg would have been lost no matter what kind of care the patient received. We cannot guess about such matters. We are not doctors." *Keller v. Anderson*, supra, at 1261.

In order to defeat a motion for summary judgment in a medical malpractice action, a plaintiff:

"* * * has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." *Orcutt v. Miller*, Nev., 595 P.2d 1191, 1193 (1979).

Appellant has wholly failed to establish these things by admissible medical testimony.

Appellant, in the present case, attempts to avoid the general rules of *Keller* and *Orcutt* by saying that the facts fit the exception set forth in *Stundon v. Stadnik*, Wyo., 469 P.2d 16 (1970). In that case we held,

> "The basis for departing from the normal rule that a standard of care must be provided by expert medical testimony arises where asserted negligence consists of conduct so obviously wanting in reasonable medical skill and prudence that it may be so adjudged even by laymen." *Stundon v. Stadnik*, id. at 22.

■ Appellant has misconceived the exception in *Stundon*. First, appellant fails to show that the present situation is one in which a layperson is competent to determine that the conduct is so wanting in reasonable medical skill and care that medical testimony is not needed. Second, appellant's testimony in his deposition is not based on first-hand observation, nor does it show a lack of the requisite care or treatment. Third, even if this situation were one in which a layperson could testify, the appellant fails to draw the requisite causal connection between the acts alleged and the death of Mrs. Harris.

One of appellant's complaints is that the gastrostomy tube was incorrectly inserted. Expert testimony is necessary to support a complaint of this type. Appellant, as a layperson without any special training in the areas complained of, is not competent to show that conduct by appellees in regard to the insertion of gastrostomy tubes, in the scheduling of feeding or other treatment and care is so wanting in reasonable medical skill that no expert testimony is needed.

The Supreme Court of Nevada in *Bialer v. St. Mary's Hospital*, 83 Nev. 241, 427 P.2d 957 (1967), stated that expert testimony is necessary when injections are administered by a nurse:

> " * * * Further, it cannot be said that the full spectrum of possible consequences from the giving of a shot are within the layman's common knowledge. At least a minimum showing by expert testimony is required that some variance from the recognized standard of care proximately caused the injury. [Citation.]
>
> "Unforeseen and undesirable reactions from an injection can result from a number of causes other than negligence; for example, the emotions and allergies of the patient, the manner in which the injection was given (though not amounting to negligence), the internal condition of the patient before or after an operation, and perhaps others." *Bialer v. St. Mary's Hospital*, id. at 958–959.

The rule in *Bialer* requiring expert testimony is applicable to the case at hand. Expert testimony is necessary to establish that the gastrostomy tube was inserted incorrectly.

■ It is well settled that in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence. If the origin of the injury is obscure and not readily apparent to a layman, or if there are several equally probable causes of the condition, testimony of a qualified physician is essential to establish a reasonable probability that the physician's negligence caused the injury. This is such a case.

Appellant's deposition is not competent to show that the insertion of the gastrostomy tube was done incorrectly. The only competent evidence before the court, based upon personal knowledge, is found in the affidavits of Doctors Sharp, Grizzle, Flick, and Hunton. Doctors Sharp and Grizzle cared for, treated and observed plaintiff's decedent during her hospitalization from May 17, 1976, to June 12, 1976. Dr. Sharp stated that for this period, the treatment and attendance of plaintiff's decedent was performed with that degree of care, skill and learning ordinarily possessed and exercised by hospitals throughout the United States.

Dr. Hunton stated that the nutrition prescribed for plaintiff's decedent was proper,

and her management, care and treatment met or exceeded the standard of care and skill ordinarily exercised by hospitals in these circumstances.

Doctors Sharp, Grizzle and Flick personally observed the decedent during the period involved. Their sworn statements are the only competent evidence before the court concerning the gastrostomy tube and indicate that it was properly inserted. The evidence is undisputed and must be accepted.

■ A physician or surgeon is presumed to have carefully and skillfully treated or operated upon a patient. Moreover, there can be no presumption of negligence from the mere fact of an injury or adverse result. Expert testimony is ordinarily required to establish negligence or a lack of reasonable care on the part of a physician in his performance of surgical procedures and in the care and treatment of his patients. *Crowley v. O'Neil*, 4 Kan.App.2d 491, 609 P.2d 198, 201, 202 (1980).

The answers in Mr. Harris' deposition are not based on personal observation or knowledge and are inadmissible to show the care received by decedent or the cause of her physical condition. Mr. Harris' statements regarding the nurses' failure to feed his wife are based on other people's comments to him and are inadmissible as hearsay. Mr. Harris' deposition also fails to contain a first-hand recounting of any improper insertion of the gastrostomy tube.

## PROXIMATE CAUSE

■ The law of proximate cause in malpractice cases is clear. Malpractice is a form of negligence. Before a physician may be held liable for malpractice, it must be shown that he departed from recognized standards of medical practice. In addition, that departure must be the proximate cause of the incident or occurrence which is the subject of the litigation. *Schrib v. Seidenberg*, 80 N.M. 573, 458 P.2d 825, 826 (1969).

■ In an action for malpractice, the plaintiff must establish that an act or omission by a physician has breached a standard of care and that the breach was the cause, both in fact and proximately, of the damage suffered by the patient. *Keogan v. Holy Family Hospital*, 22 Wash.App. 366, 589 P.2d 310, 313 (1979).

Appellant failed to prove that the proximate cause of deceased's death was the negligence of appellees. In *Keller v. Anderson*, supra, we held that it is not sufficient to point to bad results as providing the causal link. In *Keller* we said that expert opinion is necessary to draw the causal link. In the present case, appellant has failed to provide the causal link by expert testimony.

On the other hand, it affirmatively appears from the evidence of defendants that the death of plaintiff's decedent on August 1, 1976, was not caused by appellees' negligence. Both Doctors Flick and Hunton stated that whatever the cause of decedent's death, it was not caused by her hospitalization and treatment more than seven weeks earlier. This is the only evidence properly before the court dealing with cause. It is not controverted and, therefore, is determinative of the issue.

## CONCLUSION

It has long been recognized in medical malpractice actions that the physician or surgeon is presumed to have carefully and skillfully treated or operated on his patient, and there is no presumption of negligence from the fact of an injury or adverse result. In malpractice cases, expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on the part of a physician or surgeon in his medical diagnosis, his performance of surgical procedures, and his care and treatment of patients.

In our opinion the treatment administered to the patient was a procedure so complicated as to lie beyond the realm of common knowledge and experience of laymen. The testimony of experts is therefore necessary to establish that decedent's death was caused by the negligence of appellees.

The doctors' depositions in this case state that Mrs. Harris received at least adequate treatment by the appellees. All that is offered to refute this expert testimony is unsubstantiated opinions that the doctors did not heed Mrs. Harris' complaints, and were indifferent in their treatment. Thus, the conflict, if any, lies between the interpretation of the doctors and the interpretations of laymen.

The burden of establishing negligence must be met both at trial and in opposition to appellees' motions for summary judgment. A party opposing a motion for summary judgment must show that evidence is available which would justify a trial of that issue. In this case, appellant did not come forward with evidence which would justify a trial on the issue of negligence.

As to the complaint that there were various deficiencies in hospital care and equipment while the decedent was in the hospital, there is no admissible medical testimony to link the cause of death to the insufficiencies. The affidavits offered by appellant on the day of the second hearing were properly refused. Therefore, it follows that summary judgment was properly granted.

Affirmed.

McCLINTOCK, Justice, dissenting.

While I have no disagreement with the majority's conclusion that plaintiff's affidavits were not timely presented, the majority have incorrectly concluded that the affidavits submitted by the defendants in support of their motions for summary judgment purposes are "adequate for summary judgment purposes." There was, therefore, no necessity for the plaintiff to file any affidavits.

The moving party in a summary judgment action is required to present evidence showing that no genuine issue of material fact exists, and until the moving party meets this burden, it is not necessary for the court to determine the legal sufficiency of the evidence presented by the non-moving party. In order for the moving party to meet this burden in a medical malpractice action, he must first present evidence of the medical standards of care adhered to by physicians in the community under similar circumstances and then that he did not deviate from these standards.

It is undeniable that upon the trial of the case the plaintiff would have had the burden of proving a prima facie case of malpractice before the defendants would be required to present evidence. The Supreme Court of Iowa, in *Daboll v. Hoden*, Iowa, 222 N.W.2d 727, 734 (1974), said:

"A prima facie case of medical malpractice must normally consist of evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of. . . ."

Here, however, the defendants seek to short-cut the usual trial processes and avoid the expense and vexation of a jury trial by obtaining a summary judgment absolving them of all liability. They have presented affidavits which they claim show conclusively, as a matter of law, that there was no negligence on their part. This means that we must consider the kinds of proof under that portion of Rule 56(e), W.R.C.P., which provides:

". . . When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. . . ."

Certain principles basic to the determination of motions for summary judgment are well established by this court: Summary judgment is a drastic remedy that is not frequently granted; furthermore, it is not appropriate, as a general rule, in negligence actions. *Keller v. Anderson*, Wyo., 554 P.2d 1253, 1257 (1976). This general principle particularly applies to malpractice actions brought against professionals. *DeHerrera v. Memorial Hospital of Carbon County*, Wyo., 590 P.2d 1342, 1345 (1979), citing *Holl v. Talcott*, Fla., 191 So.2d 40, 46 (1966).

If summary judgment is granted by the trial judge and the decision is appealed to this court, we must review the entire record in order to determine whether summary judgment was proper. *Wyoming Ins. Dept. v. Sierra Life Ins. Co.*, Wyo., 599 P.2d 1360, 1363 (1979). Our obligation is the same as that of the trial court. *Minnehoma Financial Co. v. Pauli*, Wyo., 565 P.2d 835, 838 (1977). In addition, the appellee has a heavy burden in defending a summary judgment because this court must "look at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from facts contained in affidavits, exhibits, depositions and testimony." *Bancroft v. Jagusch*, Wyo., 611 P.2d 819, 820 (1980).

We have also held that the party seeking the summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that, as a matter of law, the movant is entitled to judgment; this is true regardless of which party seeks the summary judgment. *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350, 1352 (1974). In *Moore v. Kiljander*, Wyo., 604 P.2d 204, 207 (1979), it was taken for granted that "the movant has the initial burden of presenting a prima facie case," and it is only after that is done that the opposing party can no longer rely upon his pleading and the burden is shifted to him to show the existence of "a genuine issue of material fact." It follows that before it becomes necessary for the court to determine the legal sufficiency of the plaintiff's evidence, this court must first determine that the defendants have met the burden imposed upon them. I therefore find it necessary to look to the decisions of other courts to determine the application of that principle in malpractice cases.

The problem confronting a defendant who moves for summary judgment has been well summarized by the Florida Court of Appeals in *Matarese v. Leesburg Elks Club*, Fla.2d DCA, 171 So.2d 606, 607–608 (1965):

"It must be remembered that a motion for a summary judgment puts the movant in the unenviable position of having to prove a negative, the non-existence of an issue. He does not sustain this burden by showing that up until the time of his motion his adversary has not produced sufficient evidence in support of his pleadings to require a trial.

\* \* \* \* \* \*

"A motion for a summary judgment does not create an 'I move—now you prove situation.' The initial burden of proof is on the movant and absent his sustaining it he is not entitled to a summary judgment regardless of whether the opposing party comes forward with any proof or not."

*Matarese* was not a malpractice case, but the principle therein announced was carried forward by the Supreme Court of Florida in *Holl v. Talcott*, supra. In that case, as in the case at bar, both parties had submitted lengthy testimony concerning the facts of the treatment and the trial court had held that the affidavit submitted in behalf of plaintiff was legally insufficient. The supreme court stated:

"... As this court and other appellate courts have repeatedly held, the burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met his burden, the opposing party is under no obligation to show that issues do remain to be tried. [Citation omitted.]

"This means that before it becomes necessary to determine the legal sufficiency of the affidavits or other evidence submitted by the party moved against, it must first be determined that the movant has successfully met his burden of proving a negative, i. e., the non-existence of a genuine issue of material fact. [Citation omitted.] He must prove this negative conclusively. The proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. [Citation omitted.]" 191 So.2d at 43.

Delaware's Superior Court Civil Rule 56(e) is identical with Wyoming's. *In Hurtt*

*v. Goleburn*, Del., 330 A.2d 134, 135 (1974), the supreme court of that state held that in a malpractice case the rule requires a showing,

"(a) as to the relevant medical standards adhered to by physicians in good standing in the community under like circumstances, and, (b) that defendant's conduct was in conformity with those standards... If the conduct is shown to have conformed to the standards, then the burden shifts to plaintiff to demonstrate on the record that there is a genuine issue for trial as to either the standards or the conduct. Until then, the non-moving party is not obliged to show that issues remain to be tried. [Citations omitted.]"

Therefore, the threshold question in the case at bar should have been whether or not the movants have met their initial burden.

Considering the facts in the case at bar in the light most favorable to plaintiff, as we must, *Bancroft v. Jagusch*, supra, it appears that there are numerous occurrences that raise questions of negligence. As the majority have indicated, Diane Harris, plaintiff's deceased wife, was readmitted to Memorial Hospital on May 17, 1976. After readmission, her condition continued to deteriorate until her death on August 1, 1976. Plaintiff alleges in his amended complaint that as a result of defendants' negligence, the decedent suffered the following injuries:

"... physical injuries and damages, emotional suffering and distress; pain; suffering; unnecessary and unearned expenses paid to the defendants; additional medical expenses; loss of earnings; diminution of earning capacity; loss of diminution of the enjoyment of life; and was otherwise injured in the premises."

The complaint further alleges:

"The negligence of the defendants, jointly and severally, proximately caused the injuries and damage specified above and caused the death of DIANE G. HARRIS on August 1, 1976."

In *Harris v. Grizzle*, Wyo., 599 P.2d 580 (1979), we concluded that the complaint in the case at bar gave adequate notice to the defendants of the charges and that it is sufficient in all respects. As we stated:

"... The complaint states as to each of the defendants that there were failures: (1) to properly diagnose the deceased's condition; (2) to render careful and prudent treatment; (3) to examine deceased carefully; (4) to attend to deceased properly; (5) and to properly supervise associates, assistants and agents under their control in deceased's care and treatment...." 599 P.2d at 583.

Review of the affidavits submitted by each of the movants reveals that the affidavits do not identify what action a physician or hospital in good standing in the community would undertake under similar circumstances. While a few of the affidavits discuss in detail what actions were taken by the various defendants, none of the affidavits provides a standard by which to measure these actions.

A review of the affidavits points out the deficiencies. In support of his motion for summary judgment, defendant Grizzle submitted his own affidavit. In this affidavit, defendant Grizzle states that he is a neurosurgeon and that he limits his practice to the treatment of neurological deficiencies. He goes on to state that on May 14, 1976, Diane Harris came to his office, and at that time he examined her but "found no neurological treatable condition in my area of specialty." He then followed her condition while she was hospitalized so that if neurological changes be apparent, he could act. He relates the treatment which he observed; that he was not requested to render any medical treatment; and that as of his last visitation on June 11, 1976, she had no treatable neurological condition.

This general and conclusory language is not sufficient to sustain defendant Grizzle's burden. The affidavit generally states what the defendant did; however, the affidavit does not provide a standard by which to measure these actions. Because the prevailing standard of care required of a referring physician is not discussed, I do not see how this court can conclude that as a matter of law defendant Grizzle was not negli-

gent. *Hurtt v. Goleburn,* supra, 330 A.2d at 135.

In support of his motion to dismiss, defendant Flick filed supporting affidavits given by himself, Roger Radomsky, the Laramie County Coroner, Drs. Richard Noble and C. Rogers Wise, anesthesiologists, Dr. R. G. McCleery, the pathologist who performed the autopsy on Diane Harris, and Dr. Greer, a general surgeon.

Dr. Flick specifically sets out what actions he took both times that he saw the decedent in the hospital emergency room and what his conclusions were. He also states that in his opinion "expressed with reasonable medical and scientific probability," Diane Harris' death

"a.  . . . was due to an acute complete or partial obstruction of her airway due to laryngospasms, food particles or aspiration of gastric contents during or immediately following the feeding by Mrs. Rivera, or a combination of any one or more of these factors superimposed on the pre-existing brain damage due to the automobile accident in 1975."

Defendant Flick concludes his affidavit by stating:

"h.  The examination, diagnosis, care and treatment rendered by me to Diane Harris on the two occasions I saw her, namely, July 9, 1976, and July 23, 1976, were acceptable and met the standards of skill, care and knowledge for physicians in my medical specialty treating patients such as Diane Harris under the same or similar circumstances in 1976 in Cheyenne, Wyoming, or elsewhere for board-certified general surgeons.

"i.  I specifically deny that my examination, diagnosis, care and treatment of Diane Harris as above-described was negligent or fell below the requisite standards of skill, care and knowledge possessed and exercised by physicians in the same field of practice in 1976 under the same or similar circumstances in Cheyenne, Wyo-

ming or elsewhere for board-certified general surgeons."

This general denial of negligence is not sufficient. This court has no standard to use to determine whether or not defendant Flick's actions were in accordance with the accepted standard of care under similar circumstances. We know what he did, but cannot determine if these actions were proper. Furthermore, while defendant Flick denies that Diane's death was a result of his care, plaintiff is not only suing because of the death of his wife but also because of the physical suffering that she was forced to endure.

The affidavit given by Roger Radomsky, the Laramie County Coroner, is of no help in establishing the standard of medical care. Mr. Radomsky merely describes the fact that Diane Harris had already been pronounced dead at the time that he arrived at her residence and then he discusses the interview he had with Diane Harris' mother.

The affidavits of Dr. Noble, Dr. Wise and Dr. McCleery are virtually identical to each other and the last section of defendant Flick's affidavit. In these affidavits, the affiants generally describe their knowledge of acute complete or partial obstruction of the airway and they conclude by stating what they considered to be the cause of death and excluding the gastrostomy tube as such a cause:

"10.  The following are my opinions expressed with reasonable medical and scientific probability:

"a.  The immediate cause of death of Diane Harris on August 1, 1976, was due to an acute complete or partial obstruction of her airway due to laryngospasms, food particles or aspiration of gastric contents during or immediately following the feeding by Mrs. Rivera, or a combination of any one or more of these factors superimposed on the pre-existing brain damage due to the automobile accident in 1975.

"b.  The acute obstructing of Diane Harris's airway occurred on August 1, 1976, during or immediately following the time she was fed and immediately prior to her death.

"c. The immediate cause of death of Diane Harris was not pneumonia or the gastrostomy tube or the fact that there was drainage around the gastrostomy tube."

Once again, these general statements are insufficient to meet defendant Flick's burden. In passing, it is interesting to note that on Diane Harris' death certificate, the cause of death was listed as pneumonia. In an affidavit submitted by the defendants, Memorial Hospital of Laramie County and the Trustees thereof, given by Dr. Donald B. Hunton, he stated that "[t]he onset of pneumonia probably occurred two or three days before her [Diane Harris'] death, and in her condition, she could not overcome the disease."

The affidavit given by Dr. Dan Greer is no more helpful than the other affidavits in establishing the prevailing standard of medical care relevant to the circumstances of the case. His affidavit is very similar to the other affidavits submitted by defendant Flick. Dr. Greer ends his affidavit by concluding:

"g. Diane Harris died on August 1, 1976, but in my professional opinion her death was not in any way associated with any substandard professional care on the part of Dr. Flick or, to my knowledge, by any other physician who was involved in her care and treatment.

"h. The examination, diagnosis, care and treatment rendered by Dr. Flick to Diane Harris on the two occasions Dr. Flick saw her, namely, July 9, 1976, and July 23, 1976, were acceptable and met the standards of skill, care and knowledge for physicians in the same medical specialty as Dr. Flick treating patients such as Diane Harris under the same or similar circumstances in 1976 in Cheyenne, Wyoming, or elsewhere for board-certified general surgeons."

Dr. Flick has failed to set forth the prevailing standard of care for a physician in good standing in the community and therefore summary judgment was improperly granted in his favor.

Defendant Sharp's affidavit in support of his motion for summary judgment is also deficient in that it fails to set forth the relevant standard of care. Defendant Sharp generally describes his treatment of Diane Harris and then he concludes by stating:

"13. I know of no negligent, careless or wrongful acts or omissions by myself or any other professional, occurring at any time in the examination, diagnosis, care, treatment and attendance as a patient of Diane G. Harris. All of such diagnoses, care, treatment and attendance as a patient of said Diane G. Harris, or any other professional that I have personal knowledge of, were performed with the exercise of that degree of care, skill and learning ordinarily possessed and exercised by hospitals and physicians and surgeons practicing in Wyoming and elsewhere throughout the United States during the said period of time from May 17, 1976, through August 1, 1976. All of the examinations, diagnoses, care and treatment that I, myself, rendered to Diane G. Harris were, in my opinion, performed with the exercise of that degree of care, skill and learning ordinarily possessed and exercised by physicians practicing in my specialty in the period of May 17, 1976, to August 1, 1976."

How can this court determine whether defendant Sharp did act in accordance with the prevailing standard of care as he claims to have done, if we do not know what the standard of care is?

Finally, I also believe that the affidavit given by Dr. Donald B. Hunton in support of the motion for summary judgment filed by the hospital, the administrator and the trustees of the hospital is insufficient to support summary judgment in favor of these defendants. Dr. Hunton generally stated:

"The nutrition prescribed and given her was proper for her condition, and her management, care and treatment by Memorial Hospital of Laramie County in this and all other respects was as good as, or

better than, the care and skill ordinarily exercised in the same or similar circumstances by hospitals similarly situated and by hospitals in this community."

Like all of the other affidavits, this affidavit does not provide a standard of medical care. A finding of no genuine issue of material fact cannot be based solely upon general and conclusory language.

I, therefore, would have reversed and remanded the proceedings with directions to proceed to trial.