**Hobart COCKREHAM and Marilyn Cockreham, Appellants (Plaintiffs),**

**v.**

**WYOMING PRODUCTION CREDIT ASSOCIATION, a corporation, Board of Directors of Wyoming Production Credit Association, Individual Members Unknown, Dave Sedar, John Buckingham, Don Ditmonson, and other Unknown Officers and Agents of Wyoming Production Credit Association, Appellees (Defendants).**

No. 86–231.

Supreme Court of Wyoming.

Oct. 6, 1987.

Herbert K. Doby of Elletson & Doby, Cheyenne, for appellants (plaintiffs).

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, Howard P. Olsen, Jr., Scottsbluff, Neb., for appellees (defendants).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Hobart and Marilyn Cockreham, now plaintiffs-appellants, were defendants in an earlier foreclosure action brought by generally the same parties as present appellees. That action concluded with a judgment of foreclosure by default against the Cockrehams. In this action, the Cockrehams' present claims involving the original loan, the foreclosure process, and post-foreclosure conversion and trespass against the lender, Wyoming Production Credit Association (PCA) and its directors, officers and shareholders, whose motion to dismiss was granted before an answer was filed.

We reverse the broad dismissal as untimely, and consider the issues presented: (1) motion to dismiss; (2) judicial notice; and (3) bankruptcy/real-party-in-interest status.

## FACTS

The difficult problems in American agriculture are no less disturbing nor more clearly evidenced than by this example of the decline of American agricultural prosperity in the late 1980's. This case involves a large Wyoming ranch operation to which PCA extended a general loan in excess of $1,000,000. The appellants borrowed this substantial sum of money for their ranch operation on an improper financial statement for which Mr. Cockreham was convicted in federal court and placed on probation.

The Cockrehams' ranch did not generate sufficient income to repay the loan; they defaulted, and PCA foreclosed. Because we remand to the trial court for disposition by summary judgment or trial, it is not helpful to engage in an extended discussion of the course of the loan, default, and foreclosure events. It is sufficient to point out that following a judicial foreclosure by default, and without appeal in that case, this case raises claims involving the universe of real-estate lending and foreclosure: (1) breach of statutory and regulatory duty; (2) breach of fiduciary duty; (3) breach of obligation of good faith; (4) breach of contract; (5) trespass; and (6) conversion.

In reviewing the six claims, it appears that the first four involve pre-foreclosure events, and that the other two, trespass and conversion, may have occurred later. Consequently, we cannot determine from an examination of the mortgage attached to the complaint whether, as a matter of law, the defendants may not have committed actionable offenses alleged against them. Neither do we find, as a matter of law, that whatever may have happened in the foreclosure process was determinative of all issues of liability asserted in the

complaint as trespass and conversion. See extensive discussion of res judicata and collateral estoppel in *Texas West Oil and Gas Corporation v. First Interstate Bank of Casper*, Wyo., 743 P.2d 857 (1987).

Responding to the plaintiffs' complaint, the defendants brought a Motion to Strike, Dismiss, and Impose Sanctions, alleging bad faith, triviality, failure to state a claim, and lack of jurisdiction based on the res-judicata effect of the foreclosure proceeding. In support of their motion, the defendants filed a comprehensive, six-page affidavit signed by one of the officers, to which there were 43 pages of attachments. The assertions contained in the affidavit responded to the allegations found in the plaintiffs' complaint. As further support for their motion, the defendants also filed summaries of depositions taken of the plaintiffs, and a memorandum brief which included extensive allegations of fact taken from the affidavits and depositions. The trial court held a hearing on the motion, issued its decision letter the next day, and subsequently entered an order of dismissal.

## MOTION TO DISMISS

In its order dismissing plaintiffs' claims, the trial court stated in part:

"1. Defendant's Motion to Dismiss should be granted for reasons of failure to state a compulsory counterclaim in an earlier action, res judicata, collateral estoppel, and failure to state a claim. All allegations in the Complaint fall within one or more of these categories.

"2. The Courts determination set out herein can be done by scrutiny of the Complaint and supporting documents, and it is not necessary to consider Affidavits, Depositions, or other material."

Rule 12(b), W.R.C.P. states:

" * * * If on a motion * * * to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The trial court, in an apparent effort to avoid the time-of-notice requirements of Rule 56, W.R.C.P., structured its order as one for dismissal rather than summary judgment, and specifically stated that it was not necessary to consider material extraneous to the pleadings in treating the motion as one for dismissal. Consequently, the filed affidavits and depositions, as well as the factual events described in the briefs, are not properly before this court. *Torrey v. Twiford*, Wyo., 713 P.2d 1160 (1986); *Hickey v. Burnett*, Wyo., 707 P.2d 741 (1985); *Larsen v. Roberts*, Wyo., 676 P.2d 1046 (1984); *Kimbley v. City of Green River*, Wyo., 642 P.2d 443 (1982); *Harris v. Grizzle*, Wyo., 625 P.2d 747 (1981). In our review of the propriety of the order of dismissal, we may not consider those facts and events presented only by extraneous documents. This court, sitting in its customary role as an appellate court, is not the proper forum in which to develop facts. *Gifford v. Casper Neon Sign Co.*, Wyo., 618 P.2d 547, 551 (1980).

The identical federal rule applicable to a motion to dismiss was discussed by the United States Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957):

" * * * Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

This court has adopted that position, and has recognized the limited scope of a motion to dismiss in light of modern notice pleadings. *Carbon County School District No. 2 v. Wyoming State Hospital*, Wyo., 680 P.2d 773 (1984); *Johnson v. Aetna Casualty & Surety Co. of Hartford, Connecticut*, Wyo., 608 P.2d 1299 (1980); *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733 (1979).

On its face, the plaintiffs' claim states a cause of action, at least with regard to the trespass and conversion claims. The plaintiffs allege that the foreclosure judgment was entered before the events occurred upon which those two causes of action are based. Thus, there appear to be causes of action which arose subsequent to the foreclosure judgment, and, at least facially, cannot be barred by res judicata, failure to state a counterclaim, or collateral estoppel.

All aspects of the six-count complaint cannot be resolved by res judicata without resort to "evidence" created by the depositions and affidavits. This evidence, extrinsic to the pleadings, is not appropriately considered on a motion to dismiss, and consequently, we disapprove of the trial court's disposition of the case on a motion to dismiss.[1] *Torrey v. Twiford*, supra.

## JUDICIAL NOTICE

■ In the absence of the affidavits and attachments submitted by PCA, this record is inconclusive. The only support for the trial court's disposition would have been by judicial notice of the record in the prior judicial foreclosure proceeding. Judicial notice in this situation may not be governed by Rule 201, W.R.E., because we are here concerned with court records.[2]

■ Although we do not disregard this court's general power to take judicial notice, *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975), we now establish two requirements for judicial notice of prior court proceedings in order to insure a proper record for appellate review. First, written notice must be given to the trial court so that it is clear what matters the trial court had the opportunity to consider; and second, judicially noticed documents must be physically included as part of the record filed on appeal, or must be on file at the Supreme Court as the result of a different proceeding. *Slepian v. Slepian*, Ala. App., 355 So.2d 714 (1977), cert. denied 355 So.2d 717 (1978). Compare *Hickey v. Bur-*

1. Review of a large number of cases, primarily federal, reveals the general but not unanimous rule that res judicata and collateral estoppel can defensively be presented by a notice to dismiss. Critical evaluation justifies the conclusion that summary judgment or a joint motion for summary judgment and to dismiss, with a clear request that the court designate and judicially notice desired court records when then considered, is trouble avoidance in the litigative process. Compare *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975), with *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965):

"Clearly, from the record, Shell properly raised a defense of res judicata by motion, but, we cannot say that the fact which would make the defense good appear plainly upon the face of the complaint. In order to justify the granting of the motion to dismiss the court must have considered evidentiary matter outside the complaint."

See also *Texas West Oil and Gas Corporation v. First Interstate Bank of Casper*, supra.

2. The determination whether judicially noticed court records are adjudicative under Rule 201, or legislative and thus excluded, is not without question. It is said that sometimes it may be adjudicative, others legislative, and even in some cases both adjudicative and legislative. See especially Note, *Judicial Notice: Rule 201 of the Federal Rules of Evidence*, XXVIII U. of Fla.L.Rev. 723 (1976), particularly fn. 171 at 751, wherein the writer said, in talking about *Alexander v. HEW*, 392 F.Supp. 1 (N.D.Ill.1975):

" * * * In determining whether to permit the third party complaint, the court took judicial notice of dismissals in the previous actions as proof that the plaintiff had been given a full opportunity to litigate her grievances. The fact of the prior action was in one sense legislative because it was used by the judge to determine what course of action to take. However, the fact was also adjudicative because it related to the actions of an immediate party. * * *

* * * * * *

"Whether judicially noticed facts relating to prior records of current cases and of previous cases should be classified as adjudicative or legislative for purpose of Rule 201 is a question that needs to be resolved."

On the admissibility question without using these differentiated definitions, see generally Wigmore on Evidence § 2579. The definitions arose from the writings of Kenneth Culp Davis, see Davis, *Judicial Notice*, 55 Columbia L.Rev. 945 (1955), and Davis, *An Approach to Problems of Evidence in the Administrative Process*, 55 Harvard L.Rev. 364, 402 (1942); Wright & Graham, Federal Practice and Procedure: Evidence § 5103, and 1987 Supplement. It is noteworthy that rule drafters in Alaska and Montana have eliminated the distinction between adjudicative and legislative judicial notice by characterization as artificial and confusing. See Wright & Graham, supra, 1987 Supplement at 220.

*nett,* supra, 707 P.2d at 744, and particularly fn. 4.

We do not say that the record in this case is necessarily insufficient to justify judicial notice of the prior foreclosure. For the purposes of this case, we will consider that the record of the prior foreclosure action is made a part of the record in this case, despite its arrival here by attachment to an affidavit which we cannot consider.[3] Even so, the judicially noticed default foreclosure proceeding is not sufficient to support a motion to dismiss, at least as to the conversion and trespass claims. *Concordia v. Bendekovic,* 693 F.2d 1073 (11th Cir.1982). The summary-judgment process can use the record as then completed and now available, and sort out litigable issues, if any, which are not subject to res judicata or collateral-estoppel defenses. *Butler v. Olshan,* 280 Ala. 181, 191 So.2d 7 (1966).[4]

## BANKRUPTCY

■ This court learned from appellees' brief and oral argument that appellants filed bankruptcy, apparently in early, 1985. Appellees present here for the first time the issue whether the plaintiffs are, or the trustee in bankruptcy is the real party in interest. Appellees' real-party-in-interest argument can be developed in two fashions. First, the claims asserted by the plaintiffs may now belong to the trustee in bankruptcy and are generally related to the proceeding in the bankruptcy court. Second, the claims of impropriety in the foreclosure sale of property which plaintiffs allege belonged to third parties, including their children, may actually belong to those third parties. The present record does not contain sufficient grounds on which to make these determinations.

The following quotation from the appellants' brief which reflects the tenor of their complaint, demonstrates the complex and emotional conflict:

"Subsequently, on or about June 4, 1983, the Wyoming PCA caused to be conducted a sale of the Cockrehams' personal property at the ranch in Niobrara County, Wyoming. This sale was conducted in a vicious, hateful manner, with complete disregard of the Cockrehams' rights. Numerous items not a part of any security agreement between the parties were sold. Some of these items included: their son's refrigerator/freezer and Honda motorcycle, approximately thirty (30) mini trampolines, Cockrehams' brand, the grandchildren's sled, and approximately thirty (30) head of registered Arabian horses. The Defendant's agents also removed property which had become realty, such as hooks in the walls of outbuildings and Hobart Cockreham's saddle rack, which had been bolted into a concrete floor.

"Further, without notice to the Cockrehams, and several days prior to this June 4, 1983 sale, agents of the Wyoming PCA *gave* a registered Arabian mare of the Cockrehams to one Katy Geist, in return for Ms. Geist's aiding Wyoming PCA agents prior to and at the ranch, on the day of the sale. This mare was never properly sold nor accounted for by the Wyoming PCA."

Generally, at least, this court can envision a factual scenario where the real-party-in-interest contention might be dispositive to most or possibly all of the complaint claims. We choose not to pursue the inquiry, for two well-established reasons. First, this court will not consider an issue first presented in this court on appeal, unless explicitly and clearly documented as jurisdictional. *Gardner v. Walker,* Wyo., 373 P.2d 598 (1962). This court will not consider any matter upon which the record is silent. *Mentock v. Mentock,* Wyo., 638 P.2d 156, 160 (1981).

■ Second, we choose not to invite the federal bankruptcy record to this court for

---

3. Even if the reviewing jurist sneaks a look at the voluminous documentation in affidavit and deposition "for background," recognition is still required that plaintiffs were not given an opportunity to respond.

4. Collateral estoppel as well as res judicata are involved, since there are parties defendant in this proceeding who were not plaintiffs in the initial foreclosure proceeding, namely officers, agents, and directors of the lender.

review without first obtaining the able consideration and advocacy of counsel on the issues which the record might invoke. Those issues initially should be submitted to the trial court as affirmative defenses, pursuant to Rules 9 and 17, W.R.C.P., and particularly so considering the rights of ratification, joinder, or substitution provided in Rule 17. *Hickey v. Burnett,* supra.

In *Wyoming Wool Marketing Association v. Urruty,* Wyo., 394 P.2d 905, 908 (1964), we said:

" * * * We would agree that the burden is on the movant to sustain a motion. We would agree also that in the usual case the question of whether the action is prosecuted in the name of the real party in interest is affirmative matter to be sustained by a party claiming to the contrary."

Upon issue raised and proof provided, this question should properly first be considered by the trial court.

We reverse the order of dismissal, and remand for further proceedings.

THOMAS, J., filed a concurring opinion.

THOMAS, Justice, concurring.

I concur in the result which is reached by the majority opinion in this case. I dissented in *Texas West Oil and Gas Corporation v. First Interstate Bank of Casper, N.A.,* Wyo., 743 P.2d 857 (1987), because I did not perceive that case as an appropriate one in which to invoke the concepts of res judicata or collateral estoppel. Consequently, I cannot agree with the reliance in this case upon that case, and would simply refer the interested researcher to *CLS v. CLJ,* Wyo., 693 P.2d 774 (1985); *Delgue v. Curutchet,* Wyo., 677 P.2d 208 (1984); and the cases cited in those opinions relative to the doctrines of res judicata and collateral estoppel.